WELLS, FARGO & COMPANY's EXPRESS *v.* CRAWFORD COUNTY.

Opinion delivered March 20, 1897.

STATUTES—CONSTRUCTION.—It is the duty of the courts to give to a statute such a construction, if possible, as will enable it to take effect.

TAXATION—EXPRESS COMPANIES.—The act of April 8, 1893, regulating the assessment and collection of taxes from express and other companies, provides, as a rule of assessment, that the board of railway commissioners shall fix the sum at which the property of any such corporation shall be assessed in this state by taking the same

proportion of the aggregate value of its capital stock as the number of miles of railway in this state over which such company carries on its business bears to the aggregate number of miles of railway within and without the state. *Held*, that the act should not be construed as forbidding the board of commissioners to receive other evidence of the true value of an express company's property in the state, or to assess it at its true value, although it may be greater or less than the sum found by applying the statutory rule.

SAME—It is no objection to an assessment of the property of a foreign express company for taxation that the amount assessed against it in this state exceeds the amount of its tangible property here; for the value of the property of the company in this state, considered as part of its whole plant, and in connection with the uses to which it is put, may be more than the aggregate value of the separate articles of property owned by the company here, when not considered in connection with the use to which the property is put.

EQUITY—RELIEF AGAINST EXCESSIVE ASSESSMENT.—In the absence of fraud, intentional wrong, or error in the method of assessment, a court of equity has no jurisdiction to grant relief against an excessive assessment by the board of railway commissioners.

TAXATION—CLASSIFICATION OF PROPERTY.—The legislature has power to classify property for the purposes of taxation, and to provide for the valuation of different classes by different methods.

SAME—VALUATION.—The property of express companies may be valued as a unit for the purpose of taxation, and a proportion of the whole, fairly and properly ascertained, may be taxed by each state in which it does business.

SAME—PRESUMPTION AS TO ASSESSMENT.—On a bill to enjoin the collection of taxes assessed against an express company engaged in interstate commerce, it will be presumed, in the absence of a contrary showing, that the board of commissioners took into consideration the fact that part of its capital stock was based on business done on water ways and on realty situated in other states.

PRACTICE—RELIEF FROM EXCESSIVE TAXES.—Under the rule that he who asks equity must do equity, one who asks to be relieved from a county tax in excess of the constitutional limit of five mills should tender the amount of taxes legally due.

Appeal from Crawford Circuit Court in Chancery.

JEPHTHA H. EVANS, Judge.

STATEMENT BY THE COURT.

Bill for injunction against the collection of tax alleged to be illegal. Wells, Fargo & Company's Express filed its complaint in the Crawford circuit court, alleging, in substance, that it is a corporation organized under the laws of the state of California for the purpose of doing a banking business and express business by land and water; that it is carrying on an express business in the state of California, and in and between many of the states of the United States, and also with foreign countries; that it owns certain specific articles of personal property in Crawford county, not exceeding in value $218; that it owns a safe carried on each of the passenger trains which pass through the county, but that the aggregate value of all these safes is not greater than $120, and that it does not own the trains or cars, and has no interest therein; that it has owned no personal property in said county, other than that mentioned, within one year; that there is placed on the tax books of said county against plaintiff an alleged assessment of personal property amounting to $4,292, and a tax has been extended amounting to $67.25, and a warrant is attached to said books, authorizing the collector to collect such tax; that there has been no assessment of plaintiff's property other than by the state board of railroad commissioners, made under the act of April 8, 1893; that the capital stock of said corporation not only includes and represents the value of hundreds of miles of express business transacted upon navigable waters, but includes its banking capital and valuable real estate owned in other states, and that the capital stock affords no adequate means of arriving at the value of personal property within the state; that the assessment so made is higher than the assessment of other property of equal value, and that the assessment so

made is not equal and uniform throughout the state; that the assessment amounts to taxing plaintiff for the privilege of doing business in the state; that the act is contrary to the constitution of the state and of the United States, and contrary to the interstate commerce law. It was further alleged that there was levied, as part of said tax, five mills for general county purposes and one half mill to pay a judgment against the county for indebtedness incurred since the adoption of the constitution of 1874; that, unless restrained and enjoined, the sheriff and collector will seize and sell the property of the company, to its great and irreparable injury, wherefore it prays for an injunction, etc.

To this complaint the appellee Stewart, sheriff and collector, filed a demurrer on the ground that it " does not state facts sufficient to constitute a cause of action against the defendant, either in law or equity." The circuit court sustained the demurrer, and dismissed the complaint, and adjudged costs against the appellant company.

*L. F. Parker* and *B. R. Davidson* for appellant.

1. A court of equity has jurisdiction to enjoin the collection of an illegal tax. Sand. & H. Dig., sec. 3778; 27 Ark. 625; 30 *id.* 278–281; *ib.* 101; *ib.* 609; 34 *id.* 603; 28 *id.* 271; 30 *id.* 129.

2. The law is unconstitutional, and contrary to state constitution, the constitution of the United States, and the interstate commerce law. It is virtually a tax on the privilege of doing business in thiss tate. Art. 16, sec. 2, Const., provides that property shall be taxed according to *value*, that the valuation shall be equal and uniform, and that no one species of property shall be taxed higher than another species of equal value. No privilege, except those named in the constitution, can be taxed by direct or indirect methods, and any law

that seeks to tax property at more than its true value is void. 2 Ark. 291; 13 *id.* 752; 44 *id.* 134. Any mode of taxation that causes one to pay more taxes on property than another on property of like value renders the assessment void. 101 U. S. 143; 127 U. S. 193. All property must be taxed according to its true value. 5 Ark. 204; 46 *id.* 327. The legislature cannot discriminate between different classes of property. There must be uniformity in the rate and mode of assessment, so that there will be equality of burden. 25 Ark. 289; 27 *id.* 202–210; 49 *id.* 337; 101 U. S. 143–158; 48 *id.* 370–378, 382. Sand. & H. Dig., secs. 6455, 6457, the commissioners to *arbitrarily* fix the value of the personal property of express companies by reference to the railroad mileage over which the company does business. But to apply this rule to an express company which carries on business over *water ways*, and does a banking business, and owns real property in other states, upon all of which its capital stock is based, makes its assessment higher than the assessment of other property, and hence not equal and uniform, and violates the constituton.

3. The constitution limits the county levy to five mills, and an excessive levy renders the whole tax void. 32 Ark. 496.

*Chew & Fitzhugh* for appellees.

1. The fact that appellant's property was assessed by the board of railroad commissioners, while that of private persons was assessed by the assessor, does not render the act invalid. 52 Ark. 535; 49 *id.* 518; 46 *id.* 312; 120 U. S. 97; 92 U. S. 578; 101 *id.* 153; 115 *id.* 321.

2. *All* property within a state, whether engaged in interstate commerce or not, may be taxed by the state. 18 Wall. 206; 105 U. S. 460; 7 Wall. 71.

3. It was *clearly* the intention of the act to tax the property within this state, and the method provided has been upheld by the courts. 125 U. S. 530; 141 *id.* 18.

4. No offer was made by the company to pay the five mill tax, which was conceded to be legal. Cooley, Taxation, 763; 92 U. S. 575; 3 Dillon, 25; 106 U. S. 196; 35 Ark. 505; 32 *id.* 496; 30 *id.* 278; Cooley, Taxation, 537.

*E. B. Kinsworthy*, Attorney General, for appellees.

The act is not unconstitutional. 141 U. S. 18–39; *ib.* 40. The mere allegation that the tax law is illegal or invalid is no reason for interference by injunction. 11 Wall. 108; 92 U. S. 575; 139 *id.* 591; *ib.* 658, 153 *id.* 252.

RIDDICK, J., (after stating the facts.) The main question that we are asked to determine in this case concerns the validity of an act of the general assembly of this state approved April 8, 1893, entitled "An act to assess and collect taxes from certain corporations." (Acts 1893, p. 232.*)

---

*Secs. 1 and 2 of act of April 8, 1893, are as follows:

"Section 1. That it shall be, and it is hereby made, the duty of every sleeping or dining car company, express company, or telegraph company, incorporated by the laws of this or any other state, and carrying on business in this state, on the first Monday in July, 1893, and every second year thereafter, to make out and file with the board of railroad commissioners of this state a statement showing in detail the following: First. A certified copy of the articles of incorporation under which the said company is organized and carrying on business, said copy is to be filed but once unless the board shall otherwise direct. Second. The amount of capital stock subscribed, whether designated as common or preferred stock or by any other name or description, showing the par value of each share, and the market value thereof at the time the said certificate is required to be made. Third. The total number of miles of railway, within or without this state, over which such sleeping or dining car company runs its cars, or such express company carries on its business; and the number of miles of line within and without this state which any such telegraph company employs in the transaction of its business. Fourth. The number of miles of railway in this state over which any such sleeping or

This act requires that express companies and certain other corporations doing business in this state shall on the first Monday in July, 1893, and every second year thereafter, file with the board of railroad commissioners of this state a statement or certificate, verified by oath, showing in detail, among other things, the amount of capital stock subscribed, the par value thereof, and the market value of the same at the time the certificate is required to be filed. Such certificate

dining car company may be running its cars, and over which any such express company may be carrying on its business; and the number of miles of line which any such telegraph company may employ in this state in the transaction of its business. The statements contained in any such certificate shall be sworn to by a general officer of such corporation whose service therein makes it his duty to be personally informed about the matters to be included in such certificate. False swearing in making any of the statements required to be set forth in said certificate is hereby declared to be perjury, and shall be punished as such. If the board of railroad commissioners shall have reason to believe that any statement contained in any such certificate filed with them is false in any material matter, it is hereby made their duty to procure other information about the matters to be contained in such certificate. The said board shall also have power, and it is hereby made their duty, to resort to other sources of information, in the event any such corporation shall fail or refuse to file the certificate aforesaid.

"Section 2. When such certificate shall have been filed with said board, or such other information obtained, the said board shall proceed to ascertain the value of the entire capital stock, or of each and every one of the corporations aforesaid, and shall thereupon fix the sum at which the property of any such corporation shall be assessed in this state for purposes of taxation, by taking the same proportion of the aggregate value of the capital stock of any such corporation as the number of miles of railway in this state over which such sleeping or dining car company or express company carries on its business, or as the number of miles of line employed in this state by any such telegraph company in the transaction of its business bears to the aggregate number of miles of railway within as well as without this state over which such sleeping or dining car company or express company carries on its business; or in the case of any such telegraph company, the number of miles of line employed in this state bears to the entire number of miles employed by it within as well as without this state." (Rep.)

must further show the number of miles of railway in this state over which such express company does business, and also show the total number of miles of railway within or without this state over which such business is carried on by the company. The act provides that, when such certificate shall have been filed, or the information obtained, the board shall proceed to ascertain the value of the entire capital stock of such company, and shall thereupon fix the sum at which the property of any such express company shall be assessed in this state for the purposes of taxation by taking the same proportion of the aggregate value of the capital stock of any such corporation as the number of miles of railway in this state over which it carries on business bears to the aggregate number of miles of railway within as well as without the state over which such company does business. The act further provides that the aggregate value of the property of such corporation thus ascertained to be taxable in this state shall be duly apportioned between the counties in this state through which such company carries on its business.

The complaint alleges and the demurrer admits that the business of appellant in this state is carried on over railroads exclusively, but that a large proportion of its business outside of the state is carried on over waterways, and not over railroads, and that the value of its capital stock is based in part upon this business over waterways. It is also alleged that appellant company owns no real property in this state, but owns real property in other states of great value, and that the value of its capital stock is based in part upon this real estate. Appellant therefore contends that, as applied to its property, the rule of assessment set out in the statute violates the provision of our constitution requiring that all property shall be taxed according to its value, and

violates also the rule of equality and uniformity contained therein. The provision of the constitution referred to is as follows: "All property subject to taxation shall be taxed according to its value; that value to be ascertained in such manner as the general assembly shall direct, making the same equal and uniform throughout the state. No one species of property, from which a tax may be collected, shall be taxed higher than another species of property of equal value." Const. 1874, art. 16, sec. 5.

It may be conceded, without argument, that if the construction placed upon this act by appellant is correct,—if it arbitrarily compels the board of railroad commissioners to assess the property of this company by taking the same proportion of the value of its total capital stock as the railroad mileage over which it does business in this state bears to the total miles of railroad over which it carries on its business, the result would, under the facts alleged in the complaint, be a very unequal and unjust valuation of the property of appellant in this state. It would, in effect, tax appellant for property not situated in this state, and that plainly the legislature had no power to do. In *Peay* v. *Little Rock*, 32 Ark. 31, it was said that the valuation and assessment of property "cannot be arbitrarily determined either by law or by an ordinance." Again, in *L. R. & F. S. R. Co.* v. *Worthen*, 46 Ark. 312, 330, it was said "that the legislature cannot, under the guise of regulating the duties of assessors, exempt property from taxation." If the legislature cannot exempt property from taxation under the pretense of regulating the assessment, it follows, from reasons equally as cogent, that they cannot tax property of appellant beyond the state under the pretense of regulating the assessment of its property located and taxable in the state. As was decided in

*L. R. & F. S. R. Co.* v. *Worthen*, *supra*, "the legislature cannot discriminate between different classes of property in the imposition of taxes. Its only discretion is in the ascertainment of values, so as to make them equal and uniform throughout the state."

To this extent we can agree with the contention of counsel for appellant, but is the construction for which they contend the proper one to place upon this provision of the statute? Does the statute compel the board to follow an arbitrary rule in the assessment of appellant's property? "It is the duty of the court to uphold a statute when the conflict between it and the constitution is not clear, and the implication, which must always exist, that no violation has been intended by the legislature may require it, in some cases where the meaning of the constitution is not in doubt, to lean in favor of such a construction of the statute as might not at first view seem most obvious and natural. For, as a conflict between the statute and the constitution is not to be implied, it would seem to follow that the court, if possible, must give the statute such a construction as will enable it to have effect. This is only saying in another form of words that the court must construe the statute in accordance with the legislative intent, since it is always to be presumed the legislature designed the statute to take effect, and not to be a nullity." Cooley, Const. Lim. (6th Ed.) 218; *Slack* v. *Jacob*, 8 W. Va. 612; *Tabor* v. *Cook*, 15 Mich. 322; *Grand Rapids Booming Co.* v. *Jarvis*, 30 Mich. 309.

The constitutional provisions invoked in this case, that all property subject to taxation shall be taxed according to its value, that such values shall be made equal and uniform throughout the state, and that no one species of property shall be taxed higher than another of equal value, are clear and beyond dispute. We must

*margin note:* As to construction of statutes.

presume therefore that the legislature knew these provisions, and did not intend that the statute should conflict with the constitution. The legislature knew that it had no power to tax appellant on property situated beyond the limits of the state, and we must presume that there was no intention to do so. The object of the legislature in the passage of the law was to compel appellant and certain other corporations to pay upon their property in this state their due proportion of taxes, and no more. Our constitution provides that "all laws exempting property from taxation other than is provided in this constitution shall be void;" that "the power to tax corporations and corporate property shall not be surrendered or suspended by any contract or grant to which the state may be a party." Const. 1874, art. 16, secs. 6 and 7.

Statute taxing express companies construed.

The intention of the legislature in the passage of this act was in line with these provisions of the constitution, and it is our duty to give the act such a construction as will enable it to have effect, if it be possible to do so without doing violence to its language. It will be noticed that there are no negative words employed in the statute, and nothing which absolutely forbids the board of railroad commissioners from considering other evidence than the facts which the act requires to be certified by the company itself. The act requires that these companies shall file such certificate on the first Monday in July of every second year, beginning with the year 1893, and provides that when the certificate is filed the board shall proceed to assess the property of the corporation. As we understand the act, it is the duty of the board of railroad commissioners to meet on the day named for the purpose of receiving such certificates and making the assessment. There is nothing in the act forbidding such corporations from presenting to the board other facts tending to show the true value of their

property in this state, in addition to those which the statute requires them to certify. We therefore conclude that they have the right, when they file such certificate, to present to the board other facts also which may tend to show the true value of their property in this state, and that it is the duty of the board to consider such evidence, as well as all other information before them, and to assess said property at its true value, although it may be greater or less than the sum resulting from the application of the rule mentioned in the statute. In other words, we hold that this provision of the statute must be taken as mandatory only to the extent that, in the absence of other evidence, the board must presume that the result ascertained by it represents the true value of the corporate property in this state, but that, in addition to the facts required to be certified, the board has the right to consider, and it is their duty to consider, all other facts within their knowledge bearing on the question of the value of the property to be assessed.

It does not follow from this that the assessed value of the company's property taxable here must necessarily correspond with the total value of the safes, horses, wagons, office furniture and other articles of property owned by the company in this state, when considered separate and apart from the whole property, and apart from the uses to which such property is put. One object of this statute was to require that the property of such corporations should be assessed as a "unit profit-producing plant," and that their property in this state used in carrying on the corporate business should be assessed at its value when considered as a part of such unit or whole plant. The mere fact, therefore, that the assessment of the property of the company in this state was greater than the aggregate value of the safes, wagons and other articles of property owned by the company in this state, when considered only as safes,

*Validity of assessment of express company's property.*

wagons, etc., and apart from the use to which they are put, would not in itself justify us in concluding that the assessment was illegal and excessive. Much less does the allegation that the aggregate value of the articles of personal property owned by the company in Crawford county is less than the sum apportioned by the board to said county as the value of the property of appellant taxable in such county justify such a conclusion; for the value of the property of the company in this state, considered as part of a whole plant, and in connection with the uses to which it is put, may be more than the aggregate value of the separate articles of personal property owned by the company here, when not considered in connection with the use to which the property is put. "The value of property results from the use to which it is put, and varies with the profitableness of that use, present and prospective, actual and anticipated." And it is the duty of the board to assess the property of the company at its true value, although that value may be in part due to the fact that such property is a portion of a large "profit-producing plant." *Pittsburg, etc. Ry.* v. *Backus*, 154 U. S. 444. In other words, the allegation that the value of the tangible property of the company is less than the amount of the assessment is not sufficient, for the property of the company may be in part intangible, and that also is subject to taxation, and may be included in the assessment. *Adams Express Co.* v. *Ohio State Auditor*, 17 Sup. Ct. Rep. 604.

When relief given against assessments   But we may go further, and say that, the assessment of the property of this express company having been committed by law to the board of railroad commissioners, a complaint for relief in equity is insufficient which only alleges that the valuation by the board is excessive; for, in the absence of fraud, intentional wrong, or error in the method of assessment, the finding by the board cannot be overturned by evidence going only to

show an error of judgment in the valuation of the property. The courts are powerless "to give relief against the erroneous judgments of assessing bodies, except as they may be specially empowered by law to do so." Cooley, Taxation (2d Ed.), 748; *Pittsburg Railway Co.* v. *Backus*, 154 U. S. 421.

The method provided for the assessment of this property was legal; for the legislature has the power to classify property for the purpose of taxation, and to provide for the valuation of different classes by different methods. Const. 1874, art. 15, sec. 5; *St. Louis, I. M. & S. R. Co.* v. *Worthen*, 52 Ark. 529. The same reason exists for the separate classification of the property of express companies used in carrying on their business as exists in case of railway property. *State* v. *Jones*, 51 Ohio St. 492; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339; 2 Elliott, Railroads, sec. 740, and cases cited. Without such classification, the property of such companies could not be assessed as a unit, and the legislature has the power to require that the value of such property be ascertained by considering it in that way.

<div style="margin">Right to classify property for taxation.</div>

It has been many times held, both by the supreme court of the United States and by state appellate courts, that the property of railroads, telegraph, sleeping car and express companies engaged in interstate commerce may be valued as a unit for the purpose of taxation, and that a proportion of the whole, fairly and properly ascertained, may be taxed by the state in which it is situated. *Sanford* v. *Poe*, 17 Supreme Court Rep. 305; *Western Union Telegraph Co.* v. *Taggart*, 163 U. S. 1; *Pittsburg Railway Co.* v. *Backus*, 154 U. S. 421; *Pullman Car Co.* v. *Pennsylvania*, 141 U. S. 18; *W. U. Tel. Co.* v. *Attorney General of Mass.* 125 U. S. 530; *State* v. *Jones*, 51 Ohio St. 492.

<div style="margin">Mode of valuation.</div>

In the recent case of *Sanford* v. *Poe, supra*—a case involving the validity of an Ohio statute regulating the

assessment for taxation of the property of telegraph, telephone and express companies in that state—Chief Justice Fuller, who delivered the opinion of the court, said: "No more reason is perceived for limiting the valuation of the property of express companies to horses, wagons and furniture than that of railroad, telegraph and sleeping car companies to road bed, rails and ties, poles and wires, or cars. The unit is a unit of use and management, and the horses, wagons, safes, pouches and furniture, the contracts for transportation facilities, and the capital necessary to carry on the business, whether represented in tangible or intangible property in Ohio, possessed a value in combination and from use in connection with the property and capital elsewhere which could as rightfully be recognized in the assessment for taxation in the instance of these companies as the others."

It results from our view of the meaning of this statute, and from the law as above stated, that we do not find it to be in conflict with the constitution of this state. But, had we adopted the view of appellant, and concluded that the intention of the legislature was to adopt an arbitrary method of assessment, and to prevent the board of railroad commissioners from considering any other fact beyond those which the statute requires the certificate to furnish, the result would not have been very different; for, if this provision of the act was in conflict with the constitution, that would not necessarily compel the court to declare the whole act void. When a part of a statute is unconstitutional, but the remainder is not, the parts will be separated, if possible, and that which is constitutional will be sustained. *L. R. &. F. S. Ry.* v. *Worthen*, 46 Ark. 312; *State* v. *Marsh*, 37 Ark. 356; Cooley, Const. Lim. 209; Black's Const. Law. 62.

The substance of the act under consideration is that it gives power to the board of railroad commissioners, and makes it their duty, to assess the property of. certain corporations therein named for taxation ; further, that it requires said corporations to furnish certain facts to the board as a basis for making the assessment, and, in effect, makes it the duty of the board, in determining the value of the property òf said corporations, to consider the entire property of such corporation as a unit. As these matters were clearly within the power of the legislature, it follows that the substantial portions of this act are valid. If then it be conceded that the legislature, after having authorized the board of railroad commissioners to assess this property, and after having lawfully provided that said board in making the assessment should consider the property as a unit, went further, and undertook to compel the board to arrive at the value of the property in this state by the application of an arbitrary rule, which, as applied to the property of this company, would result in an unequal and excessive valuation of its property, it would be the duty of the board to ignore the statute, so far as it conflicted with the constitution, and assess said property at its true value, in obedience to the higher mandate of the constitution. *L. R. & F. S. Ry.* v. *Worthen*, 46 Ark. 312. The rejection of such provision would not justify either the courts or board in treating the whole act as void. The substantial portions of the act being left, it would still be a complete law, capable of being executed so as to carry out the legislative intent that the property of these corporations should be assessed and its value ascertained by this board, and to this extent it would be the duty of the court to uphold it, in order that such corporations may be compelled to bear their due proportions of the public burdens. *St. Louis, I. M. &*

*S. R. Co.* v. *Worthen,* 46 Ark. 312; *State* v. *Marsh,* 37. *id.* 209.

Presumption as to assessment. Being of the opinion that the statute is valid, and that it was the duty of the board in making the assessment to consider any legitimate evidence tending to show the actual value of the property assessed, it follows that, in the absence of any showing to the contrary, we must assume that the board, in making the assessment of the property of appellant, gave due consideration to the fact that a large proportion of its business outside of the state was carried on over waterways, and also to the other facts alleged, and that it assessed said property in this state at its actual value, and no more. The appellant does not allege in its complaint that the board refused to consider such facts, or refused to allow it a hearing on the question of the value of the property, or that there was fraud or error in the method of assessment; nor does it allege that its property in this state considered as a part of the whole property, and in connection with its use, was assessed at more than its true value. The complaint was defective in these respects, and did not state a good cause for injunction.

Practice as to relief from excessive taxes. The complaint further alleged that there was levied, as part of the tax complained of, five mills for general county purposes, and in addition one half mill to pay judgment against the county for indebtedness incurred since the adoption of the constitution of 1874. The contention on this point is that the constitution limits the county levy to five mills, and the excessive levy of half mill renders the whole tax void. But we are of opinion that this contention cannot be sustained. The county had the right to levy the five mills for general county purposes. "He who asks equity must do equity," and the appellant should have tendered the five mills which had been properly levied. *Worthen* v. *Badgett,* 32 Ark. 536; 2 Elliott, Railroads, sec. 752, and cases cited.

We are therefore of opinion that the court did not err in sustaining the demurrer and dismissing the action.

The judgment is affirmed.