CHENEY, COMMISSIONER OF REVENUES v. BELOTE.

5-932                                                    289 S. W. 2d 665

Opinion delivered April 30, 1956.

*O. T. Ward,* for appellant.

*Willis V. Lewis,* for appellee.

ED. F. MCFADDIN, Associate Justice. This is an appeal by the Commissioner of Revenues of the State of Arkansas (hereinafter called "Commissioner") from an adverse decree of the Pulaski Chancery Court in two cases consolidated for trial in that Court. In one case the Chancery Court made permanent an injunction which prevented the Commissioner from collecting taxes

claimed to be due the State; and in the other case the Chancery Court denied the Commissioner the right to proceed to collect taxes claimed to be due the State. The taxes involved are the 2% Gross Receipts Tax under § 84-1903 *et seq.*, Ark. Stats., and the Special 3% Excise Tax under Act 252 of 1951 (as now found in § 48-411 Ark. Stats. Cum. Pocket Supp.). The claimed amounts arose out of the operation of the Virginia Liquor Store at 517 West Eighth Street in Little Rock. Although the listed appellee in this Court is Arcie B. Belote, the real appellees are J. E. Ebbert and Ebbert Industries, Inc. An uncontested decree was rendered against Belote in favor of the Commissioner, and from that decree there has been no appeal. J. E. Ebbert and Ebbert Industries, Inc., prevailed in the Chancery Court, and the Commissioner has appealed.

On May 28, 1954, the Commissioner made an audit of the Virginia Liquor Store covering the period from October 1, 1951, to December 31, 1953, and ascertained a sales tax delinquency of $655.74 and a 3% excise tax delinquency of $1,037.50. Notice of such amounts was promptly sent by registered mail to J. E. Ebbert at 517 West Eighth Street. No reply being received, the Commissioner issued a tax deficiency assessment, as provided by § 84-1910 *et seq.*, Ark. Stats., and filed said certificate in the office of the Circuit Clerk of Pulaski County, as provided by § 84-1912 Ark. Stats.

Thereupon, on July 26, 1954, J. E. Ebbert and Ebbert Industries, Inc., filed suit No. 100538 in the Pulaski Chancery Court to enjoin the Commissioner and the Sheriff of Pulaski County from proceeding to collect any moneys that were claimed due from the Virginia Liquor Store; and a bond of $1,500.00 was filed to support the injunction. Shortly after the filing of the above suit, the Commissioner filed suit No. 100698 in the Pulaski Chancery Court against Arcie B. Belote, J. E. Ebbert and Ebbert Industries, Inc., alleging that the State was entitled to collect the delinquent taxes as shown by the audit hereinbefore mentioned, and that J. E. Ebbert and Ebbert

Industries, Inc., had taken over the Virginia Liquor Store and were operating same without a retail dealers sales permit, as required by the Gross Receipts Law.[1] The prayer was for the sale of the merchandise and fixtures to pay the claim of the State of Arkansas in the amount of $1,693.24, with interest and costs. Upon issues joined, the two suits were consolidated and tried in the Pulaski Chancery Court, and resulted in a decree (a) giving the State an unsecured decree against Arcie B. Belote for the amount sued for; and (b) denying the State all relief against J. E. Ebbert and/or Ebbert Industries, Inc. From that decree the Commissioner has appealed and brought up the entire record.

The evidence established that for some time prior to April 9, 1954, Arcie B. Belote, wife of Bill Belote, owned and operated a liquor store at 517 West Eighth Street in Little Rock; that J. E. Ebbert was secretary-treasurer and owner of 51% of the stock of Ebbert Industries, Inc., a corporation controlled by him and his wife; and that about April 9, 1954, Mr. Ebbert undertook to purchase for Ebbert Industries, Inc., the Virginia Liquor Store. Mr. Ebbert testified that, while investigating the store, he checked with wholesale liquor dealers to ascertain any outstanding bills due by Virginia Liquor Store, and also went to the Sales Tax Division of the State Revenue Department and talked to Mr. E. R. Hendricks, the Director of the Sales and Use Tax Division. Mr. Ebbert said that on that visit he learned that there was some question about sales tax remittances for the two most recent months, and that these were later paid by someone.

Mr. Ebbert testified that about ten days after the said trip to the Sales Tax Division, he visited the Alcoholic Beverage Control Board and obtained a liquor li-

---

[1] Section 84-1913, Ark. Stats., is specific in this regard. This section also says: "A permit is not assignable and shall be held valid only for the person in whose name it is issued and for the transaction of business at the place designated therein. The permit shall at all times be conspicuously displayed at the place of business for which issued in a position where it can be easily seen. Said permit shall be in addition to all other permits now or hereafter required by the Statutes of the State of Arkansas."

cense for Ebbert Industries, Inc., to operate the Virginia Liquor Store. He said that he then purchased the Virginia Liquor Store from Mrs. Belote for Ebbert Industries, Inc., and placed two clerks in charge, and that he only visited the store occasionally. He testified that his corporation, Ebbert Industries, Inc., operated several places, and that he knew the difference between the Sales Tax Division, and the Alcoholic Beverage Control Board, heretofore mentioned. Mr. Ebbert also testified that in May, 1954, he made another visit to Mr. Hendricks in the Revenue Department to pay the April sales tax; and that the receipt was issued to the "Virginia Liquor Store," as were all subsequent receipts. In other words, there is no evidence that the State ever issued any receipt to Ebbert Industries, Inc., in the operation of this liquor store, or ever issued any retail dealers sales permit to Ebbert Industries, Inc.

The case at bar is ruled by the case of *Thompson* v. *Chadwick,* 221 Ark. 720, 255 S. W. 2d 687, which is not cited in any of the briefs. If the Chancery decree should be affirmed by us, then the fears expressed by the minority in *Thompson* v. *Chadwick, supra,* would be completely realized; because, in the case at bar, all that J. E. Ebbert claimed that he did was (1) to go to the Revenue Department and ask if any tax was due; and (2) upon being advised that two months were in arrears, he arranged to have those two months paid; and (3) he claimed he made application for a retail dealers sales permit. If such inquiry by Ebbert can prevent the State from enforcing its tax collection laws, as set up in § 84-1907 *et seq.,* Ark. Stats., then it would be better that the State employees should never give any answers to any inquiries, for fear some waiver might be claimed. But in *Thompson* v. *Chadwick, supra,* the majority was careful to point out that it was only when the State issued a *new retail dealers sales permit* to the purchaser that the State lost the right to enforce its claim against the new owner on a subsequently discovered delinquent assessment against the former owner. In *Thompson* v. *Chadwick* we said:

"So the Commissioner had from May 7th to May 24th to determine whether Donau had paid all taxes due the State. If the Commissioner had been dissatisfied or uncertain as to the correctness of Donau's return, then a permit should not have been issued to Chadwick until all doubts had been removed as to the full payment of tax by Donau."

In the case at bar, the facts show that Mr. Ebbert was never able to obtain a new retail dealers sales permit as required by § 84-1913 Ark. Stats. Mr. Hendricks said that the records of his Department bore the notation that no new permit was to be issued for operation of Virginia Liquor Store. Mr. Ebbert did not state that he had received a new permit, but claimed that he had applied for one and "thought" it had been issued.[2] In short, Mr. Ebbert never received a new permit from the State of Arkansas issued to him or to Ebbert Industries, Inc., to operate the Virginia Liquor Store; and, until the State issued a new permit, then the State had not waived its statutory rights under § 84-1907 *et seq.*, Ark. Stats. Such is our holding in *Thompson* v. *Chadwick, supra.*

It follows that the Chancery Court decree is reversed and the cause is remanded, with directions to vacate so much of the decree heretofore entered as is adverse to the Commissioner; and to dismiss the injunction and render judgment for the State on the injunction bond filed for the amounts claimed, up to the full obligation of the

---

[2] Mr. Ebbert's testimony showed some confusion on this point. He said that when he went to the Revenue Department to make inquiry, before closing the deal, he took the sales tax permit of the Virginia Liquor Store and surrendered it and made application for a new permit for Ebbert Industries, Inc. This visit to the Revenue Department was ten days before Mr. Ebbert went to see the Alcoholic Beverage Control Board to obtain a liquor license. It seems strange that *ten days before* Mr. Ebbert made the purchase of the Virginia Liquor Store, and while he was still inquiring as to outstanding bills, he would have in his possession the retail dealers sales permit of the Virginia Liquor Store, which § 84-1913 required to be at all times displayed in the store; and it also seems strange that Mr. Ebbert would have surrendered the permit and made application for a new permit *ten days* before he went to see the Alcoholic Beverage Control Board to see if he could get a liquor license.

bond; and if there be due amounts in excess of the bond, to allow the State to proceed as it sees fit to enforce its lien under § 84-1912 Ark. Stats. for the balance due.